## LEDOUX et al. v. MORGAN.

It is not essential to the legality of a notice of protest that it should be addressed to the post-office at which the party was in the habit of receiving his letters, *eo nomine*. If it be so addressed that, in the ordinary course of transportation by mail, it would go to, and be retained at, that office, it is sufficient.

Where notice of protest is addressed according to information derived from the city factor of the party notified, due diligence will be considered to have been used to ascertain the proper address.

APPEAL from the District Court of Carroll, *Selby*, J. *Thomas* and *Snyder*, for the plaintiffs. *Stacy* and *Sparrow*, for the appellant. The judgment of the court was pronounced by

SLIDELL, J. The defendent is sued as endorser of a promissory note for $5,940, dated at Monroe, La., in 1843, and payable at New Orleans, at the counting-house of the plaintiffs. At its maturity, in February, 1844, it was protested, and the notary mailed three notices for the defendant, one addressed to him at "Monroe, parish of Ouachita, Louisiana," and another "at his domicil near Tompkins' Bend, parish of Carroll, Louisiana," and a third "at his domicil, near Lake Providence, parish of Carroll, Louisiana." At the date of the maturity of this note, and for several years previous, *Morgan* lived in the parish of Carroll. In the parish there were two post-offices, one at Pecan Grove, and one at the town of Providence, the seat of justice of the parish. *Morgan's* residence was twelve miles from Providence and about four miles from Pecan Grove, and was between those two places. *Morgan* did not resort for his letters to the Providence office, but to that at Pecan Grove. Letters addressed to him at Providence were not called for, and were sent by the postmaster to Washington as dead letters.

We consider it as established with reasonable probability by the evidence that, in the ordinary course of transportation of the mail at that time, a letter addressed to *Morgan* "at his domicil near Tompkins' Bend, parish of Carroll, Louisiana," would have reached and been retained in the Pecan Grove post-office for him. We do not consider it material that the letter was not addressed to the Pecan Grove post-office, *eo nomine*. In the ordinary course of the transportation of the mail it would, as results from the evidence, go to and be retained in that office; the purpose of transmission was secured. See *Citizens Bank* v. *Walker*, 2 Annual p. 791.

This view of the case is not however indispensable to its decision. Upon another ground the plaintiffs are entitled to recover. A witness, who was one of the house of *Burke*, *Watt & Co.* of New Orleans, states that they had been the defendant's factors for several years, and that one of the house of *Ledoux & Co.* called upon him and asked him the address of *Morgan*. It was, as he believes, in 1844. The witness gave him "O. J. *Morgan's* plantation, near Tompkins' Bend," as a steamboat address, and "Tompkins' Bend, La." as a mail address. These were the addresses then used by *Burke*, *Watt & Co.*, and their address book shows no change since that time. This latter address the plaintiffs adopted. The addition of the words "parish of Carroll," cannot of course be considered as varying it, Tompkins' Bend being in that parish. The law imposes upon the holder the duty of reasonable, or, as some of the authorities express it, ordinary diligence, to ascertain the residence of the endorser. Certainly such diligence has been exhibited in the present case. To whom was it more proper to apply for information as to the residence of the absent endorser, than to his own factor? And upon whose information could a party rely with greater confidence? The diligence appears to us not only reasonable, but exact.

It is said that *De Saulles*, the member of the house of *Burke*, *Watt & Co.*, does not state the precise time in the year 1844, when the application for information was made to him by the plaintiffs. The witness speaks positively as to

44

the fact of the application, and his reply; three years had. elapsed since the occurrence, and it was not to be expected that he should speak to the precise time.   Considering that the address was adopted by the notary, as his notarial record shows, and in the absence of any thing to the contrary, it is reasonable to connect the call upon *De Saulles* with the maturity of the note.

It is also objected that it appears from the testimony of *De Saulles* that *Burke, Watt & Co.* very rarely addressed *Morgan* by mail, but used the steamboat transmission.   But their address book exhibited both the mail and steamboat address; they gave them as such to *Ledoux & Co.*, and did not accompany the information with any qualification which would have induced a prudent man to entertain any doubt that he had obtained accurate information from the best possible source.

Much stress has been laid in argument upon the fact that, in November, 1843; *Ledoux & Co.*, being holders of a claim upon which *Morgan* was security, and having received a partial payment from the principal debtor, informed *Morgan* of the fact by a letter addressed to him at Pecan Grove.   Hence it is argued that, at the time, some member of the plaintiffs' house knew *Morgan's* proper address.   This evidence would have addressed itself to the mind with greater force if it had appeared that the letter had been replied to, or that the plaintiffs had reason to believe it had reached its destination.   The inference is not unreasonable, in the absence of such proof, that they distrusted their former information.   This was a matter in which they were deeply concerned, and we find them making enquiries for his proper address at the source where it was most likely to be obtained.   Whether *Ledoux & Co.* acted correctly in following the address book of *Morgan's* factors, is a question perhaps best answered by considering what would have been the legal consequence if that had been beyond all possible cavil the true address, and "Pecan Grove" the wrong one, and the plaintiffs disregarding the information of *Burke, Watt & Co.* had neglected to address according to that information.   It would have been characterized by the defendant as gross *laches*, and properly.

The judgment, by some oversight, awards a less sum than was due on the note, and must be amended in that respect in the plaintiffs' favor.

It is therefore ordered that the judgment of the court below be amended, and that instead of the amount decreed by the court below, the plaintiffs, *A. Ledoux & Co.*, recover from the defendant, *Oliver J. Morgan*, the sum of $5,940, with interest thereon at the rate of ten per centum per annum from the 31st October, 1844, until paid, and costs in both courts.